## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) STERLING HAMPTON, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.  CIV-18-844-HE |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| (1) PEOPLEREADY, INC.; and (2) TRUEBLUE, INC., | ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff STERLING HAMPTON ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, GRAVES MCLAIN PLLC and VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from Defendants PEOPLEREADY, INC. ("PeopleReady") and TRUEBLUE, INC. ("TrueBlue") (collectively, "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, the Oklahoma Protection of Labor Act ("OPLA"), as amended, 40 O.S. §§ 165.1 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e, *et seq.,* the Oklahoma Anti-Discrimination Act ("OAD"), as amended, 25 O.S. §§ 1001, *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

**INTRODUCTION**

1.      This is a collective and class action brought by Plaintiff challenging acts committed by Defendants against Plaintiff and those similarly situated, which amount to violations of federal and state wage-and-hour laws as set forth herein.

2.      Defendants employed Plaintiff and all those similarly situated as staffing specialists (collectively "Staffers") at their various branches throughout the United States.

3.      Defendants own and operate approximately six hundred (600) branches throughout all fifty (50) states.

4.      Throughout the relevant time period, Defendants maintained and operated a computerized time recording system that Staffers used to record their daily time. Defendants' supervisors had access to the Staffers' computerized timecards and were instructed by Defendants not to allow Staffers to record overtime. When Staffers worked hours in excess of forty (40) hours in one week (*ie*: overtime hours) and recorded it, their supervisors manually reduced the amount of hours recorded on the Staffers' timecards before submitting them to Defendants' headquarters—effectively forcing Staffers to work "off-the-clock."

5.       Because of this practice, Staffers were not paid for all hours worked in excess of forty (40) hours per workweek and all such hours should have been paid at time-and-a-half. For example, if a Staffer worked and recorded fifty (50) hours in one workweek, Defendants altered that Staffer's timecard to reflect that he/she worked only forty (40) hours. That Staffer was only compensated for forty (40) hours that workweek.

6.      Plaintiff brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective of persons who are and were employed by Defendants as staffing specialists during the past (3) years through the final date of disposition of this action who were not paid the overtime rate of time-and-a-half for hours worked beyond forty (40) in a workweek in violation of the FLSA and allege that they are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid overtime, (iii) liquidated damages, (iv) interest, and (v) attorneys' fees and costs, pursuant to the FLSA, and (vi) such other and further relief as this Court finds necessary and proper.

7.      Second, Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of a class of persons who are and were employed by Defendants as staffing specialist within the State of Oklahoma during the past three (3) years through the final date of the disposition of this action who were required to work "off-the-clock" in violation of the OPLA and are entitled to recover: (i) unpaid wages for all hours worked in a workweek, as required by law, (ii) liquidated damages, (iii) interest, and (iv) attorneys' fees and costs, pursuant to the OPLA, and (v) such other and further relief as this Court finds necessary and proper.

8.      In addition to Plaintiff's collective and class allegations, Plaintiff brings this action pursuant to Title VII and the OAD for Defendants' unlawful practices of fostering a hostile work environment and retaliating against Plaintiff for his complaints to Defendants of a hostile work environment and is entitled to recover: (i) back pay, (ii) front

3

pay, (iii) emotional damages, (iv) punitive damages, (v) attorney fees and costs, (vi) interest, and (vii) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. §§ 201 *et seq*.

10.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

11.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

12.     Plaintiff is a citizen of Oklahoma and resides in Oklahoma City, Oklahoma.

13.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, the OPLA, Title VII, and the OAD.

14. Defendant PeopleReady is a privately held corporation, which is both incorporated and headquartered in Washington.

15. Defendant PeopleReady conducts business within Oklahoma.

16. Defendant PeopleReady transacted and continues to transact business within Oklahoma by formerly and currently employing Staffers within Oklahoma and by owning and operating branches within Oklahoma.

17. Defendant PeopleReady has at all relevant times been an "employer" covered by the FLSA, the OPLA, Title VII, and the OAD.

18. Defendant PeopleReady employees more than one hundred (100) persons.

19. Upon information and belief, the amount of qualifying annual volume of business for Defendant PeopleReady exceeds $500,000.00 and thus subjects Defendant PeopleReady to the FLSA's overtime requirements.

20. Upon information and belief, Defendant PeopleReady is engaged in interstate commerce. This independently subjects Defendant PeopleReady to the overtime requirements of the FLSA.

21. Defendant PeopleReady is a wholly owned subsidiary of Defendant TrueBlue.

22. Defendant TrueBlue is a publicly held corporation, which is both incorporated in and headquartered in Washington.

23. Defendant TrueBlue conducts business within Oklahoma.

24.     Defendant TrueBlue transacted and continues to transact business within Oklahoma, by formerly and currently employing Staffers within Oklahoma and by owning and operating branches within Oklahoma.

25.     Defendant TrueBlue has at all relevant times been an "employer" covered by the FLSA, the OPLA, Title VII, and the OAD.

26.     Defendant TrueBlue employs more than one hundred (100) persons.

27.     Upon information and belief, the amount of qualifying annual volume of business for Defendant TrueBlue exceeds $500,000.00 and thus subjects Defendant TrueBlue to the FLSA's overtime requirements.

28.     Upon information and belief, Defendant TrueBlue is engaged in interstate commerce. This independently subjects Defendant TrueBlue to the overtime requirements of the FLSA.

29.     Defendants were a single integrated enterprise and/or jointly employed Plaintiff and those similarly situated by employing or acting in the interest of employer towards Plaintiff and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation and by suffering all those similarly situated employees to work.

30.     For example, when Plaintiff was hired by Defendant PeopleReady he was required to submit hiring documents to Defendant TrueBlue. Furthermore, Plaintiff's paychecks were jointly issued by Defendants, and Plaintiff was terminated by Defendant TrueBlue. Furthermore, Defendants jointly used the same Human Resources department

6

and Legal department such that complaints from Defendant PeopleReady employees were forwarded to Defendant TrueBlue's Human Resources department for processing.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

31.    Plaintiff has timely filed a complaint of hostile work environment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

32.    On August 3, 2018, Plaintiff requested his Notice of Right to Sue letter from the EEOC.

## STATEMENT OF FACTS

### I.    Facts Common to All Staffers

33.    Defendants are engaged in the business of staffing third party employers with temporary and permanent employees.

34.    Throughout the relevant time period, Staffers were employed by Defendants at their various branches throughout the country as staffing specialists.

35.    Upon information and belief, throughout the relevant time period, Defendants owned and operated approximately five (5) branches within the State of Oklahoma.

36.    Throughout the relevant time period, Defendants owned and operated approximately six hundred (600) branches within all fifty (50) states.

37.    Upon information and belief, throughout the relevant time period, Defendants employed Staffers within all fifty (50) states.

7

38.    Staffers' job duties included, among other things, performing intakes, data entry, answering telephones, payouts, clean ups, interviewing new hires, and screening new hires.

39.    Staffers were paid on an hourly basis.

40.    Staffers were not paid on a salary or fee basis.

41.    Before commencing their employment with Defendants, the Staffers and Defendants agreed upon the hourly rate he/she was to be paid.

42.    Staffers were compensated bi-weekly via check or direct deposit.

43.    Throughout the relevant time period, Staffers were scheduled to work at least five (5) days per workweek.

44.    Throughout the relevant time period, Staffers were scheduled to work at least eight (8) hours per workday.

45.    A Staffer's typical schedule was Monday through Friday. However, Staffers were sometimes required to work weekends (Saturday and Sunday). When working weekends, Staffers frequently worked at least three (3) hours per weekend day.

46.    Defendants issued each Staffer a specific "key number" that was used to record their worked hours in Defendants' computer system.

47.    The "key number" was required to enter time worked on Defendants' computer system.

48.    Throughout the relevant time period, Staffers recorded their daily worked hours every day.

49.     Throughout the relevant time period Staffers were promised one (1) unpaid hour per workday for a meal break.

50.     Throughout the relevant time period, Staffers frequently worked through their allotted meal breaks.

51.     Throughout the relevant time period, Staffers worked in excess of their scheduled work hours.

52.     Throughout the relevant time period, Staffers' supervisors had access to their individual time cards on Defendants' computer system and had the ability to alter their time cards.

## II.     Facts Pertaining to Defendants' Wage Violations

53.     Throughout the relevant time period, Staffers worked well in excess of forty (40) hours per workweek.

54.     Throughout the relevant time period, Defendants had knowledge that Staffers worked through their meal breaks.

55.     Throughout the relevant time period, Defendants systematically reduced hours submitted by Staffers during the work week.

56.     Throughout the relevant time period, Defendants did not permit Staffers to record all their hours worked on the weekend.

57.     Throughout the relevant time period, Defendants required Staffers to work "off-the-clock" without compensation at their mutually agreed upon rate for all hours worked in excess of forty (40) hours per workweek.

9

58.    Throughout the relevant time period, Defendants required Staffers to work "off-the-clock" without overtime compensation for all hours worked in excess of forty (40) hours per workweek.

59.    At the end of each workweek, Defendants' supervisors reviewed the hours the Staffers worked for that workweek and then altered the Staffers' timecards on Defendants computer system such that if a Staffer recorded in excess of forty (40) hours worked per workweek, the supervisors significantly reduced the recorded hours worked to approximately forty (40) hours for that workweek.

60.    For example, if a Staffer worked and recorded fifty (50) hours in a workweek, a supervisor altered that Staffer's timecard to reflect that he/she worked only forty (40) hours. Defendants did not compensate that Staffer for the ten (10) hours worked that were stricken from his/her time card.

61.    Staffers were compensated based upon the altered timecards and not the original time information submitted.

62.    Staffers were not compensated for any hour worked that was in excess of approximately forty (40) hours per workweek—effectively forcing them to work "off-the-clock."

63.    As a result of these policies, Staffers were not paid all their due wages within fourteen days (14) of their pay periods.

64.    Furthermore, due to Defendants' directive to reduce hours and payroll, Staffers were not permitted to enter all weekend hours worked on Defendants' computerized time recording system.

65.     Accordingly, Defendants withheld some of the wages earned by Staffers.

66.     Accordingly, Staffers were not compensated with an overtime premium for all hours worked in excess for forty (40) hours per workweek.

67.     Defendants were aware of all hours that Staffers worked as such information is electronically submitted through Defendants' time management system.

68.     Defendants had knowledge that Staffers worked through their meal breaks and worked well in excess of forty (40) hours per workweek as supervisors required Staffers to do so and because Staffers recorded that they did not take a meal break on their timecards.

69.     Staffers are not exempt from the statutory provisions of the FLSA, as they were paid on an hourly basis and are not otherwise exempt.

70.     Defendants' policy not to compensate Staffers with an overtime premium for all hours worked in excess of forty (40) hours per workweek was a corporate policy.

71.     Staffers are not exempt from the statutory provisions of the OPLA.

### III.     Facts Pertaining to Plaintiff

#### a.     Facts Pertaining to Plaintiff's Wage Claims

72.     In or around December 2016, Plaintiff began his employment with Defendants.

73.     Throughout the relevant time period, Plaintiff was employed by Defendants as a staffing specialist.

74.     Throughout his employment with Defendants, Plaintiff mutually agreed upon hourly rate of pay was approximately $13.95.

75.     Throughout the relevant time period, Plaintiff was employed at Defendants' Bethany, Oklahoma branch.

76.     As a staffing specialist, Plaintiff was paid on an hourly basis.

77.     As a staffing specialist, Plaintiff was not paid on a salary or fee basis.

78.     Throughout the relevant time period, Plaintiff routinely worked between fifty (50) and seventy (70) hours per workweek.

79.     Throughout the relevant time period, Plaintiff entered the hours he worked in Defendants' computerized time recording system.

80.     Throughout the relevant time period, when Plaintiff recorded that he worked over forty (40) hours per workweek, Defendants reduced the amount of recorded worked hours to approximately (40) hours per workweek and did not pay Plaintiff for the hours that were stricken from his timecard.

81.     When Plaintiff commenced his employment with Defendants, his direct supervisor, Ms. Diana Warhop ("Ms. Warhop"), stated to him that he better manage his time or Defendants would "manage it for him," indicating that Defendants would reduce his recorded hours worked in excess of forty (40) hours per workweek.

82.     Throughout the relevant time period, Plaintiff was subjected to Defendants' policy of not compensating Staffers for all hours worked in excess of forty (40) hours per workweek.

83.     Notably, when Plaintiff received his second paycheck—the first pay period that he worked over forty (40) hours—he realized that he was not paid for all the hours he worked in excess of forty (40) hours.

12

84.     Plaintiff then complained to Ms. Warhop regarding Defendants' failure to pay him for all hours worked, including pay with an overtime premium. Ms. Warhop responded to Plaintiff's complaint by stating: "corporate does not like paying overtime, and if you press the issue you're not going to like what's going to happen." She then gave an example of a former female employee who "pressed the issue" and was "let go mysteriously," inferring that the female employee was terminated in retaliation of her complaints of FLSA violations by Defendants.

85.     After approximately three (3) months into his employment, Plaintiff again complained to Defendants' regarding their unlawful wage-and-hour policy. This time, however, Plaintiff complained to his branch manager, Mr. Doug Lewis ("Mr. Lewis") about not being compensated an overtime premium for all hours worked in excess of forty (40) hours per workweek. Mr. Lewis replied: "you can get a portion of your overtime, but not all of it because then I would not have a job," insinuating that Defendants would terminate him if he paid Plaintiff for his earned overtime.

86.     Mr. Lewis also required Plaintiff not to record all his worked weekend hours because "corporate did not want to pay" Plaintiff overtime.

87.     Plaintiff feared pressing the issue further due to the prior threats from management.

88.     Accordingly, throughout the relevant time period, Plaintiff was required to work "off-the-clock" and was not compensated at his mutually agreed upon rate nor with overtime premium for all hours worked in excess of forty (40) hours per workweek.

89. Plaintiff was not paid all due wages within fourteen days (14) of the end of the pay periods.

90. In June 2017, Plaintiff's employment with Defendants was terminated.

91. Throughout the relevant time period, Plaintiff was not exempt from the statutory provisions of the FLSA or the OPLA.

### b. Facts Pertaining to Plaintiff's Hostile Work Environment and Retaliation Claims

92. Throughout Plaintiff's employment with Defendants, Plaintiff was the only male employee at his branch other than his branch manager, Mr. Lewis.

93. Throughout Plaintiff's employment with Defendants, Ms. Warhop frequently made comments such as and without limitation: "you do exactly what a male would," "you are such the typical male," "you're just like all the other men," "ugh, another man," and "men are so stupid."

94. In April 2017, Plaintiff was summoned to a meeting with his female supervisor, Ms. Warhop. At the meeting, Ms. Warhop stated to Plaintiff that customers were complaining because they were accustomed to a female voice and that his male voice was too threatening. She then stated that he needed to speak softer and take "the bass out."

95. In late April 2017, Plaintiff complained to Mr. Lewis, about Ms. Warhop's consistent harassment of him based upon his sex. Despite this complaint, no remedial action was taken. Instead, Mr. Lewis' sole response was that Ms. Warhop was an employee of his branch for eight (8) years and he would "get rid of" Plaintiff before he "got rid of" Ms. Warhop.

96.     In May 2017, Plaintiff attempted to file a charge of discrimination with the EEOC.  The EEOC advised Plaintiff to first use Defendants' internal complaint process before filing a charge. Immediately thereafter, Plaintiff telephoned Mr. Lewis to inquire about Defendants' hostile work environment complaint policy. During this telephone conversation Mr. Lewis informed Plaintiff that Defendants did not maintain a formal hostile work environment complaint policy.

97.     Plaintiff then complained to Defendants' regional manager, Ms. Patty Bears ("Ms. Bears"), and asked for a transfer to another branch to remove himself from Ms. Warhop.  Plaintiff's request was denied. Ms. Bears allegedly investigated the matter and concluded that the relationship between Plaintiff and Ms. Warhop was "unbearable." However, she did nothing to remedy the situation.

98.     Following Ms. Bears' investigation, Ms. Warhop made physical threats to Plaintiff. Plaintiff then proceeded to file another complaint with Defendants' Human Resources department regarding Ms. Warhop's retaliatory treatment. He requested a few days off for his safety, which he was required to take off anyway due to Defendants' unlawful overtime policy.

99.     On or around June 28, 2017, while on his permitted days off, Defendants' Human Resources department telephoned Plaintiff and issued him an ultimatum: if he did not immediately return to work he would be terminated, but if he resigned now he would receive two weeks' severance pay. Plaintiff rejected Defendants' offer because he was still required to work with Mr. Warhop and was subsequently terminated.

15

100.    Accordingly, Plaintiff was subjected to a hostile work environment on the basis of his sex while employed by Defendants. When he complained about it he was subjected to retaliatory treatment by Ms. Warhop and was terminated by Defendants in retaliation for his complaints of a hostile work environment.

## FLSA COLLECTIVE ACTION ALLEGATIONS

101.    Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective:

> All staffing specialists employed by Defendants during the past three (3) years through the final date of disposition of this action, who are or were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

102.    At all relevant times, Plaintiff was similarly situated to all such individuals in the FLSA Collective[1] because while employed by Defendants, Plaintiff and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per workweek, and were subject to Defendants' unlawful policies and practices of willfully failing to pay them at the statutorily required rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

---

[1]    Hereinafter referred to as the "FLSA Plaintiffs."

16

103.    Defendants are and have been aware of the requirement to pay Plaintiff and the FLSA Plaintiffs at a rate of one-and-one-half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully failed to do so.

104.    The FLSA Plaintiffs, under Plaintiff's FLSA claim, are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines.

105.    The numbers of FLSA Plaintiffs in the collective group are too numerous to join in a single action, necessitating collective recognition.

106.    All questions relating to Defendants' violation of the FLSA share the common factual basis with Plaintiff. No claims under the FLSA relating to the failure to pay statutorily required overtime premiums are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the collective.

107.    Plaintiff will fairly and adequately represent the interests of the collective and has no interests conflicting with the collective.

108.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

109.    Plaintiff's attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

110.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Plaintiffs

17

creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

111.   The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore, proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## RULE 23 CLASS ACTION ALLEGATIONS

112.   Plaintiff additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous three (3) years, were subjected to violations of the OPLA.

113.   The Class which Plaintiff seeks to define includes:

> All staffing specialists employed by Defendants during the past three (3) years and within the State of Oklahoma, who have been subject to Defendants' policies and practices of not being compensated at their mutually agreed upon rate for all hours worked in excess of forty (40) hours per workweek.

114.   Upon information and belief, the number of class members protected by the OPLA and who have suffered under Defendants' violation of the OPLA, as set forth herein, are in excess of forty (40) person and are thus too numerous to join in a single action, necessitating class recognition.

115.   All questions relating to the Class's allegations under the OPLA share a common factual basis with those raised by the claims of Plaintiff. No claims under the

18

OPLA relating to unpaid wages are specific to Plaintiff or any proposed OPLA Class[2] member and the claims of Plaintiff are typical of those asserted by the proposed OPLA Class.

116.    Plaintiff will fairly and adequately represent the interests of all members of the proposed OPLA Class.

117.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the OPLA by failing to pay Staffers at their mutually agreed upon rate to all members of the proposed OPLA.

118.    The class members of the proposed OPLA Class are readily discernable and ascertainable. Contact information for all members of the proposed OPLA Class is readily available from Defendants since such information is likely to be contained in their personnel files.  Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

119.    Plaintiff asserts these claims on his own behalf as well as on behalf of the OPLA Plaintiffs through his attorneys who are experienced in class action litigation as well as employment litigation.

120.    Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed OPLA Class and has no interests conflicting with those of the Class.

---

[2]    Hereinafter referred to as the OPLA Plaintiffs.

121.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual OPLA Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

122.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendants. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the OPLA Plaintiffs' jobs and continued employment.

123.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed OPLA Class, continued violations of the OPLA will undoubtedly continue.

124.    Whether Plaintiff and the OPLA Plaintiffs were properly compensated at their mutually agreed upon rate for all hours worked is a common question which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiff on Behalf of All FLSA Plaintiffs**

125.    Plaintiff and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

20

126.    Throughout the period covered by the applicable statute of limitations, Plaintiff and other FLSA Plaintiffs were required to work and did, in fact, work in excess of forty (40) hours per workweek.

127.    Defendants knowingly failed to pay Plaintiff and the FLSA Plaintiffs for all hours worked and failed to pay Plaintiff and the FLSA Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) hours per workweek.

128.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

129.    Defendants' conduct was in violation of the Fair Labor Standards Act.

130.    Plaintiff's requests for relief are set forth below.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### The Oklahoma Protection of Labor Act, as amended, 40 O.S. §§ 165.1 *et seq.*, Made by Plaintiff on Behalf of All OPLA Plaintiffs

131.    Plaintiff and the OPLA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

132.    Prior to commencing their employment with Defendants, Plaintiff and the OPLA Plaintiffs mutually agreed upon an hourly rate of pay.

133.    Throughout the period covered by the applicable statute of limitations, Plaintiff and other OPLA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

134.    Despite working well in excess of forty (40) hours per workweek, Defendants only compensated Plaintiff and the OPLA for approximately (40) hours per workweek.

21

135.    Defendants knowingly failed to pay Plaintiff and the OPLA Plaintiffs at their mutually agreed upon rate for all hours worked in excess of forty (40) per workweek.

136.    Plaintiff's and the OPLA Plaintiffs' wages are earned and due.

137.    Accordingly, Defendants withheld Plaintiff's and the OPLA Plaintiffs' earned and due wages.

138.    Plaintiff and the OPLA Plaintiffs were not paid all their due wages within fourteen days (14) of their pay periods.

139.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

140.    Defendants' conduct was in violation of the Oklahoma Protection of Labor Act.

141.    Plaintiff's requests for relief are set forth below.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Hostile Work Environment)

142.    Plaintiff re-alleges and incorporates by references all allegations in all preceding paragraphs.

143.    The conduct alleged herein violates Title VII as Defendants have engaged in sex harassment and have created, maintained and condoned a hostile work environment toward Plaintiff.

144.    The conduct Plaintiff complained of was sufficiently severe or pervasive to alter the terms and conditions of his employment by creating an abusive working environment.

22

145.   The Defendants knew about the conduct and failed to implement reasonably prompt and appropriate corrective action.

146.   Plaintiff's requests for relief are set forth below.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**The Oklahoma Anti-Discrimination Act, as amended, 25 O.S. §§ 1001, *et seq.*,**
**(Hostile Work Environment)**

147.   Plaintiff re-alleges and incorporates by references all allegations in all preceding paragraphs.

148.   The conduct alleged herein violates the OAD as Defendants have engaged in sex harassment and have created, maintained and condoned a hostile work environment toward Plaintiff.

149.   The conduct Plaintiff complained of was sufficiently severe or pervasive to alter the terms and conditions of his employment by creating an abusive working environment.

150.   The Defendants knew about the conduct and failed to implement reasonably prompt and appropriate corrective action.

151.   Plaintiff's requests for relief are set forth below.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.***
**(Retaliation)**

152.   Plaintiff re-alleges and incorporates by references all allegations in all preceding paragraphs.

153.   Plaintiff lodged a complaint with Defendants regarding the hostile work environment to which he was subjected to and, as such, engaged in protected activity under Title VII.

154.   Plaintiff's complaints to Defendants were a protected activity.

155.   Defendants retaliated against Plaintiff by physically threating him and by terminating him.

156.   The conduct alleged herein violates Title VII.

157.   Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Oklahoma Anti-Discrimination Act, as amended, 25 O.S. §§ 1001, *et seq.*,**
**(Retaliation)**

158.   Plaintiff re-alleges and incorporates by references all allegations in all preceding paragraphs.

159.   Plaintiff lodged complaints with Defendants regarding the hostile work environment to which he was subjected to and, as such, engaged in protected activity under Title VII.

160.   Plaintiff's complaints to Defendants were a protected activity.

161.   Defendants retaliated against Plaintiff by physically threatening him and by terminating him.

162.   The conduct alleged herein violates OAD.

163.   Plaintiff's requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all FLSA Plaintiffs and all OPLA Plaintiffs employed by each Defendant, demand judgment against Defendants as follows:

A.      At the earliest possible time, Plaintiff should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported collective defined herein. Such notice shall inform them that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

B.      Designation of Plaintiff as representative of the FLSA Collective and Rule 23 Class defined herein, and Plaintiff's counsel as Class Counsel;

C.      Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

D.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed OPLA Class members under the Oklahoma Protection of Labor Act;

E.      Demand a jury trial on these issues to determine liability and damages;

F.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

G.     A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.*, the Oklahoma Protection of Labor Act, as amended, 40 O.S. §§ 165.1 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.,* and the Oklahoma Anti-Discrimination Act, as amended, 25 O.S. §§ 1001, *et seq.*;

H.     All damages which Plaintiff and all FLSA Plaintiffs and all OPLA Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, emotional damages, punitive damages, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

I.     An award to Plaintiff and all FLSA Plaintiffs and all OPLA Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial Complaint in this action on all unpaid wages from the date such wages were earned and due;

J.     An award to Plaintiff and all FLSA Plaintiffs and all OPLA Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

K.     An award to Plaintiff and all FLSA Plaintiffs and all OPLA Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

26

L.      Awarding Plaintiff and all FLSA Plaintiffs and all OPLA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

M.      Pre-judgment and post-judgment interest, as provided by law; and

N.      Granting Plaintiff and all FLSA Plaintiffs and all OPLA Plaintiffs other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated:   August 30, 2018

Respectfully Submitted,


*s/Rachel E. Gusman*
Rachel E. Gusman, OBA #22161
rachel@gravesmclain.com
Graves McLain PLLC
7137 S. Harvard Avenue, Suite F
Tulsa, Oklahoma 74135
P: (918) 359-6600
F: (918) 359-6605

-and-

**OF COUNSEL**
James A. Vagnini
jvagnini@vkvlawyers.com
(*pro hac vice applications forthcoming*)
Robert R. Barravecchio
rrb@vkvlawyers.com
(*pro hac vice applications forthcoming*)

27

Alexander M. White
awhite@vkvlawyers.com
(*pro hac vice applications forthcoming*)
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

**ATTORNEYS FOR PLAINTIFF**